U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

MAY 2 1 2013

TONY R. MOORE  CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ASHLEY DIKAN                                    CIVIL ACTION NO: 12-2626

VERSUS                                          JUDGE DONALD E. WALTER

CYPRESS BEND RESORT                             MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Defendant in this matter, American Liberty Hospitality Services, Inc. ("ALH"), previously misidentified as Cypress Bend Resort. Plaintiff, Ashley Dikan ("Dikan"), opposes the motion. For the reasons stated herein, Defendant's motion [Doc. #4] is **DENIED**.

## BACKGROUND INFORMATION [1]

Dikan filed suit against ALH, her former employer, in the 11th Judicial District Court for Sabine Parish, Louisiana alleging that she was wrongfully terminated in violation of La. R.S. 23:967 – the Louisiana Whistleblower statute. Dikan also asserts claims for defamation, false light, negligent supervision, and other delictual acts. [Complaint ¶¶ 21 and 23]. ALH removed the matter to federal court pursuant to 28 U.S.C. § 1332(a). [Doc. #1].

Dikan was hired by ALH as a night auditor and began her employment on February 3, 2012. Dikan describes her responsibilities as a night auditor as follows: "preparing reservation information for the following day, verifying room rates, printing shift balances, distributing reports, recapping sales, and running reports after all departments have closed – at the earliest, after midnight."

---

[1] The court describes the events as alleged by Dikan because it must accept her allegations as true when evaluating Defendant's FRCP 12(b)(6) motion.

[Complaint ¶ 3]. Dikan also states that as night auditor she was required to update two spreadsheets (known as "MICROS" and "DIR") by pulling data from a variety of reports and systems. [Complaint ¶ 4]. Dikan alleges that she received minimal training despite the rather complex auditing system used by ALH. Dikan alleges that she was only provided with a four page instruction manual of how to perform her job duties, and was expected to resolve unanticipated technical problems on her own. [Complaint ¶ 5].

Dikan alleges that on or about April 6 or 7, 2012, she observed ALH's accounting and human resources manager, Barbara Rams ("Rams"), modify the DIR (daily income report) spreadsheet to erase a $98,000.00 discrepancy. Dikan alleges that she made a verbal objection to the action, to which Rams allegedly replied "if it's anything small, just shove it in, make it add up." [Complaint ¶ 7]. Dikan alleges that an unidentified former night auditor had been given similar instructions regarding discrepancies. Dikan was concerned that she had observed a violation of state or federal law and that ALH expected her to participate in the practice. Dikan alleges that she informed another employee that she objected to the behavior and was considering whether to report the conduct to state officials. [Complaint ¶ 8]. Thereafter, Dikan alleges she soon began to hear rumors that Pinkston (another ALH employee and personal friend of Rams) was advertising to hire a new night auditor. Dikan alleges that she was worried about her job security, and that she tried to contact Pinkston to discuss the rumor without success. [Complaint ¶ 9].

Dikan alleges that approximately one week later she was working her shift and attempting to complete her nightly auditing duties when she encountered an issue with data entry that was not covered by the instruction manual. [Complaint ¶ 11]. Specifically, Dikan alleges that data had been "zeroed-out" prematurely by some other unknown/unnamed individual. Dikan alleges that she

2

attempted to contact Rams and Pinkston numerous times for instruction on how to proceed, but that her calls went unanswered. [Complaint ¶ 12]. Left without instruction, Dikan states that she called a friend who is a computer programmer for advice on how to resolve the issue. He suggested that she roll the computer's clock back to try to force the system to reproduce the data values as they would have been prior to the "zeroing-out". [Complaint ¶ 12]. Dikan states that after taking her friend's advice she attempted to contact Rams for several days without success.

Dikan alleges that on Friday, April 13, 2012, she was terminated by Pinkston, who told her that she was being fired because she falsified records on the evening she attempted to force the computer to reproduce the missing data values. [Complaint ¶ 13]. Dikan claims that she never received a written explanation for her termination nor any indication of the exact work policy she violated. [Complaint ¶ 13].

After her termination Dikan filed for unemployment benefits in Missouri, where she had recently been living and with whom she had sufficient unemployment credits to claim unemployment compensation. [Complaint ¶ 15]. Dikan was initially denied benefits because ALH informed the Missouri Division of Employment Security ("MDES") that she was terminated for misconduct. [Complaint ¶ 15]. Dikan appealed the initial finding, and after a hearing, she was found to be eligible for unemployment benefits because she had attempted in good faith to contact Rams and Pinkston for assistance when she encountered the computer problem at issue. [Complaint ¶ 18].

Based on the above allegations, Dikan filed suit against ALH for violation of the Louisiana Whistleblower statute and for defamation, false lights, and other delictual acts.

## LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6) a defendant may move to dismiss a claim

3

for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim a district court must limit itself to the contents of the pleadings, including attachments thereto. Fed. R. Civ. P. 12(b)(6); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A pleading will survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all of the plaintiff's allegations as true. *Twombly*, 550 U.S. at 550. However, the plaintiff's pleading must contain more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## A.   The Louisiana Whistleblower statute

The Louisiana Whistleblower statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices. *Hale v. Touro Infirmary*, 886 So.2d 1210, 1214 (La. App. 4th Cir. 2004), *writ denied*, 896 So.2d 1036. Louisiana Revised Statute 23:967 provides in relevant part:

> A.   An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> > (1)   Discloses or threatens to disclose a workplace act or practice that is a violation of state law.
> >
> > (2)   Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

4

(3)     Objects to or refuses to participate in an employment act or practice
        that is a violation of state law.

A plaintiff asserting a claim under the statute has the ultimate burden of proving that an actual violation of state law occurred to prevail on the merits of the case. *Accardo v. La. Health Servs. & Indem. Co.*, 943 So.2d 381 (La. App. 1st Cir. 2006). It is insufficient for a plaintiff to merely object to employment practices with which she disagrees or finds distasteful. *Hale*, 886 So.2d at 1215.

In the context of a 12(b)(6) motion this Court must accept Dikan's allegations as true. With this standard in mind, the court finds that Dikan has plead sufficient facts to state a claim under the Louisiana Whistleblower statute. Dikan alleges that she made a verbal objection to a supervisor (Rams) regarding the deletion of values on the daily income report, which she believed to be a violation of state tax law. She also alleges that she was terminated without good cause shortly thereafter.

ALH contends that Dikan's claim should be dismissed because she cannot prove that it committed an *actual* violation of state law. ALH argues that, at best, Dikan makes an assumption that its daily income report is used for tax purposes and that editing the report in the nature described in Dikan's complaint would result in the submission of false tax information to state authorities. ALH is correct in stating that Dikan must ultimately prove that the deletion of values in the daily income report and its subsequent use for tax purposes would violate state law. Although ALH has provided numerous citations to cases where the court has decided this issue in the context of a motion for summary judgment, ALH has failed to provide the court with case law to support dismissal for this reason in the context of a 12(b)(6) motion. The facts as alleged by Dikan, if true, make her claim for relief plausible on its face. This minimal threshold is all that is required for

5

Dikan's claim to survive as 12(b)(6) motion.  Likewise, it would be improper for the court to engage

in the burden shifting analysis of *McDonnell Douglas* to determine whether Dikan was, in fact,

terminated for legitimate reasons in the context of a 12(b)(6) motion.

**B.**     **Defamation and Other Tort Claims**

To establish a defamation claim under Louisiana law a plaintiff must prove the following

elements: (1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity;

(4) malice, actual or implied; and (5) resulting injury.  *Brannan v. Wyeth Laboratories, Inc.*, 526

So.2d 1101, 1105 (La. 1988).  When the alleged publication of the defamatory statement is in

response to a governmental or quasi-judicial agency, it is subject to qualified immunity.  *See Boyd*

*v. Community Credit Corp.*, 359 So.2d 1048, 1050 (La. Ct. App. 1978).  "[T]he interest of public

welfare and social necessity dictate that an employer not be unreasonably restricted in responding

to an investigating agency's request for information concerning an employee's dismissal."  *Triplett*

*v. Bell of Orleans*, LLC, 2000 WL 264002 (E.D. La. 2000) (citing *Boyd*).  "The employer must be

free to make a complete and unrestricted communication without fear of liability in a defamation suit

even if the communication is shown to be inaccurate, subject to the requisites that the

communication is in *good faith*, is relevant to the subject matter of the inquiry, and is made to a

person (or agency) with a corresponding legitimate interest in the subject matter."  *Williams v. Touro*

*Infirmary*, 578 So.2d 1006, 1010 (La. App. 4th Cir. 1991) (emphasis added).

ALH moves to dismiss Dikan's defamation based on its qualified immunity.  This argument

is unpersuasive.  For ALH to meet all requirements of qualified immunity the communication must

have been made in good faith.  Dikan's complaint alleges that ALH *willfully* published defamatory

information to MDES, which resulted in an initial denial of her unemployment claim.  Because this

6

court must accept Dikan's allegations as true, ALH bears the burden to demonstrate that its statement to MDES was made in good faith. The court also notes that some Louisiana courts have found that an employer cannot properly raise the defense of qualified immunity within the context of an exception of no cause of action. *See Farria v. La Bonne Terrebonne of Houma, Inc.*, 476 So.2d 474 (La. App. 1st Cir. 1985); *Gianfala v. Allemand*, 444 So.2d 150 (La. App. 1st Cir. 1983); *Williams*, 578 So.2d at 1009-1010. The court agrees with this finding given that qualified immunity is an affirmative defense. In analyzing a 12(b)(6) motion the court may only consider the statements contained in Dikan's complaint (as the truth) and the attachments thereto. The court cannot make a credibility finding that ALH acted in good faith. Accordingly, ALH's motion to dismiss Dikan's claim for defamation must be denied.

For the same reasons ALH's motion to dismiss Dikan's claims of false light, invasion of privacy, negligence, and "other delictual torts" must also be denied. All of these claims are subject to ALH's affirmative defense of qualified immunity. Assuming that Dikan's allegations are true, she has plead sufficient facts to state her claims.

## CONCLUSION

For the reasons assigned herein, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #4] is **DENIED**.

**THUS DONE AND SIGNED**, this _20_ day of May 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

7